First case for argument this morning is 23-1414, Google v. EcoFactor. Mr. Smith, whenever you're ready. Thank you, Judge Gross. Your Honors. May it please the Court. Matthew Smith for the Appellant and Cross FLE, Google. I'd like to address the issues with respect to Dependent Claim 20, Claim 24, and at this time the Cross Appeal. With respect to Dependent Claim 20, it's dependent from Independent Claim 1, which requires a system for controlling an HVAC system, and one or more processors, and these one or more processors have to carry out specific functions that are not particularly relevant to this issue. Claim 1 also requires a memory, but there's no further constraint on that. The memory can be configured in any way. It has no particular function to carry out. It simply has to exist in the system. And you prevailed on Claim 1. Yes. The Board found Claim 1 unpatentable over the combination of the Vedakint and Ehlers prior art references, but Claim 20 was found patentable. So presumably the patentable content of Claim 20 comes from the limitation of Claim 20, and the limitation of Claim 20, the thing that Claim 20 adds, is that one of the one or more processors, which Claim 20 calls the first processor, has to be located remotely from this memory that has to exist in the system, and not be in direct electrical contact with it, with the practical effect being that Claim 20 is reciting a computer operating on a network and cooperating with the system. The Board primarily took issue with the presentation in the original IPR petition with respect to Claim 20, and that begins on appendix page 262. The IPR petition for Claim 1 had contended that the primary prior art reference Vedakint has a computer or a processor called Processing Means 44, and with respect to Claim 20, the IPR petition pointed to a particular place in the principal prior art reference Vedakint, namely column 9, lines 14 and 38, on appendix page 457, where the Vedakint reference said, the system can be divided into separate and distinct parts, and specifically gave the example of the functional block 16 and the functional block 14 being in separate and distinct parts, and being implemented in separate microprocessors. The petition referred to that discussion and said, once you have separate microprocessors, it's obvious as a matter of design choice or as a matter of... The specific one, and there's so many different issues and arguments between these two cases, I'm very confused. Is this the one where the Board said you didn't point out which of the processors was the one that... Yeah, that's absolutely correct. Just want to make sure. That was the problem the Board had with the mapping. And that is, they are correct, are they not, that you did not point out which of the processors would do this? That is correct in the sense that the petition did not say, the specific thing that we are identifying as the first processor is this. The petition took a more general approach, which was to say, if you have separate and distinct parts in the system that can be implemented in separate microprocessors, any one of these could be the processor that is remote from the memory. Because once you have two of them, and once we know it's obvious... And why isn't the Board wrong under our deferential standard of review? Why is the Board incorrect that it was necessary, if you say this was just a design choice, you have to give us more specificity about which processor it is and something about that processor, and you failed to do that. What's wrong with that? For two reasons, Your Honor. The first is, the Board said they couldn't evaluate it because they didn't have enough information. But then they did evaluate the specific scenario that's put forward in the Vedicant reference, namely where the processing function 16 is implemented separately. And there the Board actually just misapprehended what the Vedicant reference was saying about that. The Board ruled out that specific scenario, where effectively the processor 16 is the first processor of claim 20, by saying it would have with it the memory that the IPR petition identified as the memory for claim 1. And so it wouldn't be remote from that memory. But the very section of... What's the problem with that? I mean, this is substantial evidence review. Because the very section that Vedicant... Where Vedicant puts forward this specific example says that they are on separate microprocessors. That means that you have two systems. And so the memory for one is different from the memory from the other. And whichever one you pick there, as long as they're remote from one another, the processor in one is going to be remote from the memory in the other, and vice versa. And that's what the petition was contending. And we think that's fairly clear in the argumentation on appendix pages 260 at sequitur. Did the patent owner make an argument with regard to the lack of specificity in terms of the processor identifying the processor? No, I don't think so. So is this one of the cases where you're making an APA argument about how the Board came up with this argument in the first instance of this decision? Yes, I believe so. Did they ask you about it? Well, I guess we know to that. Did they ask you about it in an oral argument? I don't think they asked about the APA argument specifically because it came up in the oral argument. No, not the APA argument. Did they ask you about how you were mapping all this stuff to Claim 20? I don't recall that specifically, Judge Hughes. With respect to- If they did ask you, you don't have an APA argument, do you? It would depend on exactly what they asked. Well, if you notice that they have a problem with the way you're mapping this and you haven't described it explicitly enough to them and they ask you about it and you give an answer, then you've been given an opportunity, notice and an opportunity to respond. That's not an APA issue. I mean, you can't remember what happened in an oral argument. I certainly didn't memorize this record. It's not my job. So if you can't tell me whether or not they did it, then I don't see how we could find an APA problem. But certainly one could find an abuse of discretion in the way the argument was presented in the petition, answered by the board in the sense that they said they could not evaluate it and then they in fact evaluated the argument that was being put forward as the most specific example in the Vatican text. With respect to Claim 24, and Claim 24 is the second independent claim which recites a system for controlling an HVAC system at a user's building, and this is the particular issue where the board faulted the identification of the system. In other words, what are the boundaries of this? Did you ask for a claim construction of system? No. Well, so how do we know what's inside or outside the system? I think that's relatively difficult, Your Honor. I think that's because- Well, shouldn't you have asked for a claim construction if you thought it mattered to your argument? And I think it does here, right? It does. There, I think, are two issues. One is a procedural one and one is a substantive one. And I think the substantive issue is, let's say we identified a system in the prior art that excludes the second censors, and there's a question about that in the board's opinion, so not to gloss that over. But then if we identified correctly a system in the prior art that includes all of the functional claim limitations of Claim 24, aside from the modification- Oh, sorry, that is an anticipation ground. That includes all of the functional limitations of Claim 24, why isn't that enough? In the sense that the word system, as you point out correctly, I think, doesn't give us a lot of guidance in and of itself. A system is simply a- I mean, isn't that your problem for not defining system? I mean, we're talking about 24E, right? That the second censor has to be located external to the system. Where in, how do you say it, Wedekind, is there a censor device external to the system? That would be the censor device 36, which is external to the system that we identified under Claim 1 and refer back to in Claim 24. And that's the problem of the board. You may have made it in Claim 1, but you didn't make it again with respect to Claim 24. And I think that's kind of right. I mean, you can show me where in your petition you made this argument in Claim 24, but I'm not seeing it. So at the top of appendix page 262 is where that argument happens? Sorry, 272. Right. And you're saying the whole system would be- is that what we describe as 10, Assembly 10? And you're saying this is something less than the whole system?  Okay, but the confusing thing to me is you seem to say the reverse on 272. Right, and that's the phrase, Wedekind's Thermostat Assembly 10 including Processing Means 44 is such a system, right? Well, yeah, and it says the- well, I'm reading in our external to Wedekind's Thermostat Assembly 10, describing 10 as the system. Right. So it seems to me the board had a basis not only for saying we're not going to incorporate necessarily everything you said in Claim 1 into this, and two, you seem to be saying not that and even the opposite. Yeah. So where's the abuse of discretion? I don't know if it's abuse of discretion, substantial evidence, maybe abuse of discretion. Where is it? The board perhaps could have said that, but that's not quite what they said. And it's also not complete to say Wedekind's Thermostat Assembly 10 including Processing Means 44 is such a system because it's preceded by that clause as explained in Element 1A. And the board did go back to Claim 1 and look at the mapping under Claim 1, but they only got part of it. Okay? The mapping under Claim 1- Yeah, but we're not talking about Claim 1 here. We're talking about Claim 24. And maybe some would call it redundancy, and I know you have page limits and word limits in these cases, but you've got to make the case with respect to the claims, and you're not telling me you made it here, right, other than a cross-reference? Where is it on Page 272? Yeah, it's not on Page 272, Your Honor. It's in the cross-reference. Okay. And in Page 22, do you agree with me that you're talking about Assembly 10 as the system, and the whole basis for your argument here is Claim 10 is not the system? Yes, something less than Assembly 10 is the system. What would we look to to reach that conclusion? The mapping under Claim 1, Your Honor, because of the initial clause as explained for Claim Element 1A. Okay. But there's different languages, isn't there? Sorry. No, no. I mean, are we talking- In Claim 1, we're talking about a source external to the building which 36 could be and still be part of the system, right? But for 24E, you need it to be external to the system. I thought that was the problem here. I mean, it makes no sense to me either. If their patent, what they patented as the second source, could include an external temperature sensor outside the building for both 1 and 24E, then they should rise and fall together. I assume they're going to tell me 24E is something different than an external temperature sensor outside the building, in which case they have two different meanings and you can't map it the same way to satisfy one. Is that the problem here? I mean, again, you could have asked the board for construction of what a system was and whether it included the external temperature sensor or not because I can see it going both ways. I mean, isn't that the- If 24E means something other than just an external temperature sensor, then Wedekind doesn't show that, right? If 24E means something other than an external temperature sensor- 36 is outside air temperature. Correct. And you use that for external- Are you saying that that shows not just put a temperature sensor outside the building that sends information to the system, but some other kind of outside air temperature sensor? No, that's what we say it is. It's just that when it's external- But I think they're going to say that that's not what 24E is. That's what 1E is because it says it's external to the building. They're going to say 24E is something like satellite weather data through the internet or something. And Wedekind doesn't show that. And the claim language of 24E is external to the system. And if system is a group of components- So let me ask you this. Yes. Is 36 part of the system for 1, but not part of the system for 24? I don't think it's part of the system for either. And I think that's because the mapping for Claim 24 depends on the mapping for Claim 1. Even though the line drawn around all of this stuff for 10 includes 36. In which appendix page are you talking about, John? I don't know. It's the prior art diagram for Wedekind. You should know this. It's the main mapping that we've been talking about. If you look at appendix page 214, which is the mapping we refer back to on Claim 1, we actually draw a red dash box around a subgroup of components. Yeah, but why did you get to do that? If you didn't ask for a claim construction that this is the system, then the more logical reading is the system is 10, not your own created version. Because that is a system that fulfills the function of the claims. And I don't think there is one system to the exclusion of all others that could exist in the prior art. Systems can have subsystems and supersystems. And I think, Judge Prost, to get back to the earlier point, the board actually looked at Claim 1 and the mapping under Claim 1 on appendix page 214. And that mapping starts with a sentence, a thermostat assembly 10 includes a parameter estimation system 16, a predictor system 14, registers 45, and a programmable thermostat 12. But then it continues on to say these components, together with additional processing circuitry depicted in figure 5, et cetera, are a system for controlling the HVAC system. And then provides a diagram drawing a red dash box around those components. The board actually looked at that, but only talked about the first sentence, not the second sentence or the diagram, which is why we think that's an abuse of discretion. Well, also, as you point out, this is your argument, this is your petition, right? This is Claim 1. Yes. This is not Claim 24. You pointed me correctly initially. We were looking at the arguments you made with respect to Claim 24. That's absolutely right. This is the reference back in Claim 24 to Claim 1 that occurs at the top of appendix page 272. But the statement in your petition with respect to Claim 24 is contradictory in the sense that it says, what against Thermostat Assembly 10 is the system?  Now, yes, you refer back to Claim 1, but nonetheless, that was the hook that the board grabbed to conclude, based on your own definition, that the system is not the narrower items in the red block that you drew, but the entire system as drawn. And I think, Judge Lynn, the board could have said, this reference back to Claim 1 and the following language are a little bit inconsistent, and we're going to resolve that in your favor or against you as a matter of procedure. But they didn't say that. They actually went back and looked at Claim 1 and looked at it incorrectly, and that's why we think that's reversible. Yeah, I mean, I agree with you. They could have done that, and maybe they should have done that. But to pick up on Judge Youth's point, you didn't ask for a claim construction. You didn't ask for any definition of what a system is. So here we are, sort of in the ether, arguing about what is a system and what's in and what's out of a system. You bore the burden of trying to persuade, and you're left with this. I don't know that it's within our purview to overturn that. I understand, Judge Lynn. I would just say, as a default matter, the system is a very broad concept. And if you look at what it is in the 983 patent, it's all over the place. I would go further and say it's not only a very broad, it's a very nebulous concept. It can be anything, you know, two things. That's a system. And in a lot of these cases, it doesn't mean necessarily, because we have quite a few of these process cases that if the board had gone the other way, we would have found abusive discretion in that regard either. It's just your standard of review is pretty difficult. In any event, your time will be storied, though. Thank you. Good morning. Good morning, and may it please the Court. My name is James Pickens for Ecofactor, Cross Appellant, and Appellee. Your Honors, would you like to begin with where we just left off on Claim 24? Yes. Thank you. So, Your Honor, the petition's mapping for Claim 24 was perfectly clear and consistent. Well, do you disagree that the argument with respect to Claim 1, if that were included in the discussion and in the petition for Claim 24, you would have had a problem? I disagree. So, first, if I may, I wanted to just reference Appendix 271 and 272, which is Claim 24. And we already looked at their mapping for Claim 1A, where it was very clear that they said the Thermostat Assembly 10, including processing means 44, is such a system. But they were also even clearer in 24E. That's also on Appendix 272. And what they said, it couldn't be clearer. They said, The second data is provided by outside 36 air temperature sensors, which are a part of a second sensor device and are external to Wiedekind's Thermostat Assembly 10, the system. And so in Claim 24, it was abundantly clear from both 24A and 24E that there was a direct mapping of the Thermostat Assembly 10 is the system. So the board had a very clear articulation of the mapping. They said Thermostat Assembly 10 is the system, and then they argued that the sensors were external to that. And they were incorrect. As you pointed out, Judge Hughes, the sensors are integrated in the Thermostat Assembly 10. They're not external to it. So I think that the board correctly relied on the mapping they presented for Claim 24, since that was the claim that the board was evaluating. Well, let me ask you this. I understand all that. Is there any place in your patent, the specification that describes what it means to be external to the system for 24E? Is it different than the 180? Yes. The patent is clear. Where? I mean, the patent, the preferred embodiment of the patent in Column 5. What's the appendix number? I apologize, Your Honor, I have to pull that up. 71. Thank you. So the patent is clear that the preferred embodiment, and really the focus of the invention, is using Internet weather. That was a key. In Column 5, it says at line 15, the server logs outside temperature and humidity data for the geographic locations for the building. Such information is available from sources that publish detailed weather information based on geographic areas, such as by zip code. And also in the patent at appendix 60, you can see the weather database in Figure 5. So the preferred embodiment is that you are obtaining this outside temperature information over the Internet, external to the system itself, which is the control system, like the servers and the thermostat. We're not limited to the preferred embodiment? Not at all. I just wanted to clarify that absolutely. Claim 24 does have a different scope than Claim 1. That's why it uses different language. It doesn't just say external to the building. 24E says it has to be external to the system. And once the petition mapped the system very clearly to the Thermostat Assembly 10, the question for the Board was very simple. Is the outside sensor in Vatican external to the Thermostat Assembly 10? And it's not. It's clearly integrated as part of that assembly. Now, I wanted to respond to your question, Judge Prost, which was, would we have a problem if the Board had instead applied the mapping for Claim 1, which was, my friend argues, is different than their mapping for Claim 24? I don't think we would have a problem. And that's because when you look at what they said for Claim 1, they said, this is on Appendix 215. So, first of all, for Claim 1B, they have the same mapping as they did for Claim 24. It says, quote, Thermostat Assembly 10, parentheses, the system, close parentheses. That's for Claim 1B on Appendix 215. So, even for Claim 1, I think it's pretty clear that Thermostat Assembly 10 was their system. Now, going back to 1A, the petition said, these components are the system, and it was referring to the previous sentence where they identified Thermostat Assembly 10 as one of the components of the system. So, I don't think the petition sufficiently articulated a theory that we should artificially define systems looking at this prior art reference to be everything except for one component. And the board actually apprehended that, and they noted in their final written decision that because the petition was silent on this issue, they didn't ask for a claim construction, and they didn't address outside censors in this Claim 1 mapping at all. It was silent on the outside censors. So, the petition never actually asked the board to find that a POSITA would understand a system to exclude outside censors. That argument's not in the petition. Okay, can I move you to the first issue we covered, which was the processor located remotely? Now, it's my understanding that the board ultimately said there was no motivation, not sufficient motivation shown by the petition, because there are multiple processors and they had to pick one of them. My read of the record, which may have been incomplete, you didn't make that argument. That wasn't an argument you made in response to the petition, correct? No, we made that argument, Your Honor. In Appendix 3563, that's the patent owner response. At the top of Appendix 3563, we pointed out that petitioner's expert, Mr. Shaw, does not address the limitation of the, quote, first processor. Because he didn't, and neither did the petition. They never actually mapped first processor to any of the specific processors in the reference. They just didn't pick one. And we pointed that out in our patent owner response on Appendix 3563, and the board agreed with us that that failure to map first processor is fatal, effectively, to the petition's theory, because they didn't give the board a theory of what the first processor was. Would that matter if any of the processors would work? It absolutely does, Your Honor, because the petition was very clear in laying out its theory that their theory is that the memory is the computer memory and that it registers 45, which is a database memory. So then, when they're talking about this Claim 20 limitation, the problem is that each of the processors that they've discussed in the petition is electrically connected to and local to both of those memories, the computer memory and the register 45 database memory. And the reason that they're always local and connected is because the processors that they're pointing to to show the computer thermo-modeling, that is what this patent is about, they need this memory. And the board had substantial evidence and cited, you know, it's undisputed that in the Wedekind reference, the processors are physically coupled to and local to the memory. They need the memory to work. So in my friend's yellow brief at page 33, I think it's actually very clear that the parties agree that in the prior art reference itself, in Wedekind, each of the relevant processors is electrically connected to the memory. They said in the yellow brief that Wedekind shows that, now, again, they didn't pick a first processor, but for the time being, I think that they're now using the parameter estimation assembly 16 as what they wish they had mapped to the first processor in the petition. But the board looked at that component and found that that component is always electrically connected to the memory that they mapped. Okay, but we're talking about the combination of Wedekind and LRs. And on page, I'm just looking now where you talk about, because my understanding of the board is they were talking about the motivation. And you make the argument on 3565, I believe, that this is merely saying it would have been obvious to change Wedekind because LRs uses a different system. Merely because a different configuration in the first processor could have been used does not make it obvious to use. But isn't there an obvious argument that transcends that the board should have dealt with? You've got two pieces of prior art. Everything's included in both. And the question is the motivation. You didn't make any arguments that it would have been physically impossible to do it because of the technology. There's a cost-benefit argument that could be made, but not a teaching away. So why wasn't there sufficient motivation? So there were two theories presented. One was based on Wedekind by itself. But I'm talking about the other one. And then this is the second one, which is the combination. And it went down because the board concluded there was no motivation to combine. Right. And what the board found was that because the petition had not mapped first processor to any particular processor, the board felt that the petition could not meet its burden to show that a Posita would be motivated to implement the first processor in this specific way that it's remote and not connected to the memory that it needs to do all of this thermodynamic modeling work that the patent's about. What the board said was, effectively, you didn't map first processor to any particular thing. So even if we combine Ehlers with Wedekind, well, where's the first processor? You didn't map it. Are you saying it's what part of Ehlers is, you know, doing the – even if you combine with Ehlers, there was no theory articulated below that would have actually shown that it would have been – take Wedekind, which is already functional and everything's local to the processors, and somehow modify it, which, you know, what the petition needed to do was say, here's the first processor. We say it's assembly 16. Then they needed to say it would be obvious to move assembly 16 away from the memory. But they didn't make that argument. They didn't theorize that it would be obvious to take a specific processor and move it away from the memory. And if they had, then we would have been able to respond to that argument and make our position of why perhaps we would be saying, look, actually Ehlers teaches you that this wouldn't work, or Wedekind teaches a way, or what have you. But that argument wasn't in the petition. So we think the board was totally within its discretion to say that since the petition didn't map first processor, there's no way to get all the way to a motivation to modify Wedekind to rearrange the way of Claim 20. And it's undisputed that Wedekind by itself is not arranged in the manner of Claim 20. And finally, Your Honor, on the Ehlers piece, even if you combine with Ehlers, under the petition's theory, they never said you would replace all the things in Wedekind that are meeting all the other claim elements. So they still need Wedekind for their combination. So it doesn't really matter what Ehlers discloses. They have Wedekind for Claim 1. They need Wedekind to meet all these elements, do all these computations. And so that's why it wasn't sufficient to just say, well, there's another reference out there. The board said, look, you're stuck with Wedekind. That's your theory. You have to tell us what part of Wedekind would you move to be remote and not connected to the memory, and they didn't do that. Your Honor, may I turn to our appeal, which is on Claim 1? So this is the part where we're the cross appellant. And our argument is about the obviousness finding on Claim 1. The law says that if you're going to combine, here what the board did was they agreed that you would combine non-local weather information with Wedekind's system. You would basically strip out all of Wedekind's required local sensors and you would replace those with Internet data. The law requires that they show that this would be suitable for Wedekind's system and that Wedekind does not teach away. That's what the law required them to do. But there was no substantial evidence below that this would have been a suitable modification to Wedekind. And Wedekind actually does teach away. So we think that under both prongs of the test, there was no substantial evidence to support the board. I don't quite take your argument. I mean, I understood your argument to be that there was a teaching away in Wedekind and I don't think there's a sufficient basis, candidly, for teaching away. You rely on the word required. That doesn't do it for me. It didn't do it for the board. And the board was relying on the fact that there would have been, you know, Wedekind was ready for improvement and there would have been benefits. And even though they're not the best, the law, KSR, does not require that it be the best option. So I thought the board's analysis of the motivation read very much as the standard. Assuming we reject your teaching away argument, what's deficient under the substantial evidence review of what the board did? What's missing is evidence that this modification would be suitable for Wedekind's nonlinear efficiency model. There was no evidence below from an expert or from a person of skill in the art. What does it mean by suitable? Do you mean it's impossible to do? What is suitable? No, I mean that in this context, I mean that Wedekind's nonlinear efficiency model would successfully, would fulfill its purpose of accurately modeling the system. Wedekind explains. Is the law required that it fulfill the same purpose or it fulfill any purpose? I'm not positive about that, but I don't think it requires that it fulfill the same purpose. The law just requires that a person of ordinary skill in the art would look at Wedekind and conclude that this modification would be compatible with the nonlinear efficiency model. And that's what was missing. I don't know what compatible is. I think our case law says, if you can establish that it would be technically impossible to do this, that would be sufficient. But the words you're using, not suitable or even inefficient, maybe there would be drawbacks, but there would also be corresponding benefits. That to me is quintessential motivation to come up. So tell me why I'm wrong. In this context, Wedekind's nonlinear efficiency model teaches that the outside temperature around your building is really hard to measure with just one source because there's a lot of shade and other things that make you, it says in the reference that you have to place all these sensors all around the building to get an accurate reading. And so with that context in mind, now to say that you would actually use a nonlocal source that doesn't account for any of those impacts that Wedekind says you have to account for to model this building, that is what was missing below is evidence addressing that teaching of Wedekind that for my nonlinear efficiency model, I need to place multiple sensors around this building. They're required for this to work as to do what it's supposed to do, which is to model the building accurately. Okay. We have to end it there. Thank you. Well, we continue to reserve your rebuttal of the other side response to your cross-appeal. Okay, Mr. Smith. Thank you, Your Honor. I just have a few quick points in the cross-appeal and then one point on the claim 20 argument. Okay. I'll start with the claim 20 because that's the way my brain works. No problem, Your Honor. I think that the argument that Mr. Pickens just made regarding the functional element 16 requiring memory and therefore not being remote from that memory is difficult to reconcile with the statement in the prior reference that says that functional block 16 can be made a separate and distinct component and implemented on a separate microprocessor. Once you have that and once they're remote from each other, it's possible to make it remote from the memory. On the cross-appeal, the statement from Mr. Pickens that there's no substantial evidence that this is a suitable modification for Vadeken's purpose, I would just remind that this is a case where Ecofactor has not challenged the reasonable expectation of success. They have not challenged the assertion in the petition that this would have been a predictable modification. As the board found, they have not challenged that the implementation would have worked. So what they're actually talking about in terms of suitability is a little bit cryptic there. We also have evidence before the board from the Ehlers reference and from Mr. Shaw's testimony, which occurs on appendix page 341, that network weather data was accurate. Ehlers says it is of sufficient localization to be accurate for the purpose in Ehlers. The last point I want to make about the cross-appeal is the alleged teaching away. Ecofactor is reading a lot into this statement at column 3, lines 62 to 67 of the Vadeken reference. That statement says multiple sensors are required because there's some variation in temperature by location. What it notably does not say is something like, don't use a network source of temperature. That would be pretty odd, too, because the Vadeken patent was written and filed in 1991, I think, prior to the invention of the web, so you wouldn't expect that. But it's more, I think, logically read, if anything, as a teaching away from using a single sensor. Vadeken just saying you need multiple sensors there, not a teaching away from using a network source of data. Nor is there any statement in Vadeken that its model requires some sort of enhanced accuracy for the outside temperature, or that it wouldn't work with network temperature data. Vadeken is just silent on that. The evidence from the board came from references that were closer to the relevant time frame for determining obviousness, which is 2007. And that's the Ehlers reference, which says fairly directly that network temperature is available and of sufficient accuracy. Thank you.  All right. We'll restore the two minutes of rebuttal if you need them. Thank you. So the issue is motivation. It is on our appeal. What we're saying is that you would not be motivated in possession of Vadeken with a reference that's teaching you that you really need to use multiple sensors placed right at the building to capture these local effects. You wouldn't be motivated, and it says those are required, you wouldn't be motivated to use a single source that's not even local. That's the argument.  Thank you. We thank both sides in the case to submit.